## SPENCE VS. SPENCE.

In an action to compel the defendant to convey to the plaintiff certain land, the complaint alleged that the plaintiff borrowed of N. certain sums of money to purchase said lands of the United States; that to secure the repayment of the money the land was entered in the name of N., and the patent issued to him; that at the time of making said loan plaintiff executed to N. his note for the amount, and took N.'s bond for a conveyance of the land to him if said note should be paid at maturity; that plaintiff left said bond in defendant's hands, for the purpose of having defendant take up said note with moneys to be sent him by plaintiff, and obtain for plaintiff a deed of the land from N. upon surrender of the bond; that plaintiff sent defendant a sum sufficient to pay the note, and directed him to make such payment, but defendant converted the money to his own use, and afterwards paid N. the amount due on the note, and by surrendering to him or destroying said bond, obtained from him, without plaintiff's knowledge or consent, a conveyance to himself of said land, &c. *Held*, that to maintain his action plaintiff must show both the delivery of the money to the defendant, and that it was delivered for the purpose stated in the complaint.

*Held*, therefore, that an answer which alleged that the defendant never received from the plaintiff any money with instructions to buy or pay for, or for the purpose of buying or paying for, the land mentioned in the complaint, showed a good defense.

*Held*, also, that an averment in the answer, that all negotiations with N. for the purchase of said land, whether conducted by the plaintiff or the defendant, were for the benefit of the defendant, and with the express understanding between the plaintiff and the defendant that said land was being bought for defendant and with his money, and was to be deeded to him by N.—was a plain denial of the allegation in the complaint, that the defendant took the title without the plaintiff's knowledge or consent.

The words "express understanding" in the answer, are equivalent to "express agreement," or "express contract."

The language of a pleading, under the code, should be construed in the sense in which it was employed by the pleader, if it will fairly admit of that construction.

If the answer was defective in not more fully and specifically stating the understanding or agreement of the parties, the plaintiff's remedy was by motion. R. S., ch. 125, sec. 22

APPEAL from the Circuit Court for *Jefferson* County.

The complaint in this action alleged that in 1849 the plaintiff borrowed $100 of one Northrop, with which to purchase of the United States a certain tract of land in Jefferson county; that in 1850 he borrowed of said Northrop another equal sum with which to purchase another tract of land in the same county; that to secure the repayment of said sums, by agreement between Northrop and the plaintiff, the lands were entered in Northrop's name, and the duplicates and patents issued to him; that at each of the times of said loans the plaintiff made and delivered to Northrop, his, said plaintiff's, promissory note for $100 with interest, payable in two years; that Northrop, in consideration thereof, executed to the plaintiff two bonds of the same dates as said notes, by which he covenanted to convey to the plaintiff said tracts of land, if the plaintiff should pay said notes at maturity; that in 1851 the plaintiff went to England; that during the year 1852 he sent to the defendant $200, and in 1853 $200 more, directing the defendant, at the time of sending each sum, to apply the same to the payment of said notes given to Northrop; that the defendant received said sums in due course of mails, but converted the same to his own use; that the plaintiff, upon his going to England, left in the defendant's possession said two bonds of Northrop, for the purpose of having the defendant, upon the payment of said notes, procure from Northrop deeds running to the plaintiff of said two parcels of land; that in 1855 the defendant paid Northrop the amount due on said notes, and by surrendering to him, or cancelling, or using as his own, said bonds, obtained from Northrop, without the knowledge or consent of the plaintiff, a deed of said lands, and still retains the legal title to them, and is in the actual possession thereof. The complaint further avers the value of the

use, rents and profits of said lands, and that the defendant has cut timber from the same of a certain value ; that the plaintiff has requested the defendant to convey the land to him, and to account to him &c., which he refuses to do ; and thereupon the plaintiff demands judgment for the value of the use, rents and profits, and for the value of the timber so cut from the land, and also that the defendant convey the lands to the plaintiff.

The answer alleges that the defendant never received from the plaintiff the sum of $400, nor any other sum, with instructions to buy or pay for, nor for the purpose of buying or paying for, any of the lands mentioned in the complaint; and that he never used any of plaintiff's money for the purpose of paying for any of said lands ; that all negotiations with said Northrop for the purchase of said land, whether conducted by the plaintiff or the defendant, were for the benefit of the defendant, and with the express understanding between the plaintiff and the defendant that said land was being bought for said defendant and with his money, and that whenever deeded by Northrop, it was to be deeded to the defendant.

On the trial, the court having intimated that the answer was defective and insufficient, the defendant asked leave to amend it by inserting statements to the following effect:— " that the land first mentioned in the complaint was, at the time of the entry thereof, occupied by the defendant, who resided thereon with his family ; that the plaintiff was sent by the defendant to Milwaukee, and went at the time mentioned, to procure the money of said Northrop to enter the same, for and in behalf of the defendant; that without the knowledge or consent of the defendant, the plaintiff had said land contract made and executed to him, said plaintiff; that he returned immediately from Milwaukee after the entry of said land, and at once delivered said land contract to the defendant, and informed him that it would make no difference about his, defendant's, getting the deed, that said land contract was made to him, plaintiff; that at the time of the entry of the second mention-

ed piece of land in the complaint, he, this defendant, sent the plaintiff, and the plaintiff went, to enter the same, or have the same entered, for the defendant; that he furnished the plaintiff the sum of $50, and instructed him to borrow the balance of Northrop; that the plaintiff procured the entry of said second mentioned piece of land by said Northrop and took the land contract therefor in his own name, without the knowledge or consent of the defendant; that upon his return, which was immediately thereafter, the plaintiff delivered said last mentioned contract to the defendant; that the defendant always after that time held said land contracts in his own behalf and for his own benefit, until they were surrendered to Northrop; that he never held them, or either of them, as agent, trustee or in any fiduciary capacity for the plaintiff; that the moneys sent to him by the plaintiff from England, were not sent, nor any part of them sent, to be applied in payment of the notes mentioned in the complaint, nor with instructions to so apply them, but were sent by plaintiff to be applied in payment for other lands which the plaintiff before that time had bought [describing them], for which he was then indebted to one Pratt, and with instructions from the plaintiff to apply said moneys to the payment of plaintiff's indebtedness to said Pratt, and not otherwise; that he paid said Pratt the first $200 mentioned in the complaint, agreeably to said instructions; that he failed to pay the other $200, for the reason that said Pratt had disposed of said last mentioned premises; that said plaintiff, at the time he, defendant, received said last mentioned $200, was indebted to the defendant in a much larger sum of money, and the defendant retained said last mentioned $200, as he lawfully might; and the defendant denies that he took a conveyance of the premises mentioned in the complaint, or of any part thereof, from said Northrop, to himself, without the knowledge or consent, and against the wishes of the plaintiff, and says that it was with the full knowledge of the plaintiff, and with his express consent, that he took the deed to him-

self, and that Northrop conveyed said premises to him by the express directions of the plaintiff; and he denies that the plaintiff, upon going to England, as stated in his complaint, or at any other time, left said bonds or land contracts with him for the purpose of having him, upon the payment of said notes, procure deeds of said premises to the plaintiff; and denies that he ever, in any manner, acted as the agent of the plaintiff in procuring a conveyance of said premises from Northrop, and says that he acted solely in his own behalf, and for his own benefit."

With the application for leave to amend, the defendant filed an affidavit of merits in the usual form. The court denied the application. The defendant then asked leave to amend by adding to the answer the following allegations: "And the defendant denies that he took a deed of the premises mentioned in the complaint, or of any part thereof, from said Northrop to himself, without the knowledge or consent and against the wishes of the plaintiff; and says that it was with the full knowledge of the plaintiff, and with his express consent, that he took said deed to himself, and that Northrop deeded said premises to him by the express directions of the plaintiff." The court refused leave to make the amendment.

The plaintiff then introduced in evidence the deed of the lands in question, executed by Northrop to the defendant, dated December 21, 1853, and rested. The defendant moved for a nonsuit, which was denied. He then offered in evidence the deposition of Northrop, for the purpose of showing that the lands in question were deeded by Northrop to him by the express direction of the plaintiff; but the court ruled that the evidence was inadmissible under the answer. The defendant having been sworn as a witness in his own behalf, his counsel offered to show by him that the lands in question were bought by the plaintiff for him; that the plaintiff never had any money invested in them, but they were paid for entirely with the defendant's money; that the

original negotiations with Northrop were for the defendant's benefit; that it was understood between the plaintiff and the defendant that the.lands were to be deeded by Northrop to the latter; and that about the time the plaintiff went to England, he instructed Northrop, in the presence of the defendant, to make the conveyance in that manner. The evidence was objected to and ruled out as inadmissible under the answer. The defendant then introduced evidence tending to show that the plaintiff, at the time he went to England, was indebted to the defendant in the sum of $900; that defendant paid the first $200 sent him from England by plaintiff, on an indebtedness of the plaintiff to one Pratt for a certain piece of land; that this was done in accordance with letters from the plaintiff, which had since been lost or destroyed; and that he kept the other $200 and gave plaintiff credit for it, but did not pay it to Pratt, because the latter had disposed of the land for which it was to have been paid. The defendant having rested, the plaintiff introduced evidence to show the amount paid by the defendant to Northrop for the lands in question; and as a witness in his own behalf, testified that he was not indebted to the defendant at the time he went to England; that on his way thither, in the presence of Northrop at Milwaukee, he directed the defendant to pay the money that should be sent to him from England to Northrop on the notes given for the lands here in question; that he did not give any directions to the defendant in his letters, about the payment of the money, until he sent the last $200, when he directed him to pay the money to Northrop.

The court found the facts substantially as alleged in the complaint, and that the plaintiff was entitled to judgment as therein demanded. A motion for a new trial was refused, and judgment entered in accordance with the finding; from which the defendant appealed.

*Barber & Fribert*, for appellant.

*Enos & Hall*, for respondent.

*By the Court*, Dixon, C. J.   We are of opinion that the answer, as it now stands, is good, and that the evidence offered should have been received under it.   Certainly, the denial that the defendant received the plaintiff's money for the purpose of buying and paying for the land in controversy in the name of the plaintiff, or that he was instructed to do so, or used the money in that way, is sufficient.   It may be, as seems to have been held by the circuit court, that it involves an affirmative implication that the defendant received the money, and is so far a negative pregnant.   But it is a negative pregnant very harmless in its nature.   It does not maintain, at most not fully, the pleading of the adverse party.   Gould's Pl., VII, § 40. The gist of the action is, to secure the title to the land alleged to have been fraudulently appropriated by the defendant, and not to recover the money.   To maintain his action the plaintiff must prove both the delivery of the money and the purpose for which it was delivered ; and if he fails in either, it is an end of the suit.   Hence he cannot complain, should the defendant admit the receipt of the money, but take issue upon the residue of the transaction, or deny the fraudulent appropriation of the title.

And the allegation that the defendant took the title without the knowledge or consent of the plaintiff, seems equally well traversed.   It is possible that the pleader might, with attention, have framed a more point blank negative, yet the whole answer contradicts it.   The two cannot stand together.   The averment that all negotiations for the purchase of the lands, whether conducted by the plaintiff or the defendant, were for the benefit of the defendant, and with the express understanding that the land was bought for him, is a plain denial.

But there is some refinement upon this part of the answer. It is said that the words " express understanding " mean nothing—that they are of no force as showing or tending to show that there was a contract or agreement between the parties to the effect stated.   We differ with plaintiff's counsel upon this

point also. We think them, in this connection, an equivalent expression for "express contract" or "express agreement." Such was the undoubted intention of the pleader; and when the language fairly admits it, it is to be construed in the sense in which it was employed by him. All technical rules of pleading are abolished. "In the construction of a pleading for the purpose of determining its effect, its allegations shall be *liberally* construed with a view to substantial justice between the parties." R. S., ch. 125, sec. 21. Substantial justice between these parties demands that the defendant, as well as the plaintiff, should be heard upon the merits of the controversy, and the answer, as well as the complaint, is to be liberally construed to that end. If there be any defect in this part of the answer, it is that the understanding or agreement of the parties is not more fully and specifically stated, the remedy for which was by motion. R. S., ch. 125, sec. 22.

But suppose we mistake the legal effect of the answer: then we think the amendment should have been allowed. It could not have taken the plaintiff by surprise, or if it had, the cause might have been continued upon the payment of proper costs. The amendment proposed was merely a more detailed and particular statement of a defense, the material facts of which already appeared.

Judgment reversed, and cause remanded for further proceedings according to law.